UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:10CV62-R

MELVIN B. HAMPTON                                                                                   PLAINTIFF

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security                                                                DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the court is the complaint (DN 1) of Melvin B. Hampton ("plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. §405(g). The plaintiff is represented by attorney Julie Atkins. Both the plaintiff (DN 11) and the defendant (DN 12) have filed a fact and law summary. The district judge has referred this case to the undersigned magistrate judge (DN 13) to review the fact and law summaries and to submit a report and recommendation. 28 U.S.C. §636. By order entered on June 3, 2010 (DN 6), the parties were notified that oral arguments would not be held unless a written request therefore was filed and granted. No such request was filed.

On July 12, 2006, the plaintiff filed applications for disability insurance and supplemental security income benefits alleging that he became disabled on July 4, 2006, at age 46 (Tr. 90, 95). He alleged disability due to a heart attack (Tr. 105). Plaintiff's employment history includes work as a temporary laborer, factory machine operator, and lumberyard worker (Tr. 106, 159). Administrative Law Judge D. Lyndell Pickett ("ALJ") conducted a hearing on June 24, 2009, in Bowling Green, Kentucky (Tr. 22). Plaintiff was present and represented by non-attorney John Sharpensteen. Also present and testifying was Tina Stambaugh, a vocational expert.

The final decision of the Commissioner was rendered on August 25, 2009 by the ALJ. In support of the decision denying Title II and XVI benefits, ALJ Pickett entered the following numbered findings:

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.

2.  The claimant has not engaged in substantial gainful activity since July 4, 2006, the alleged onset date (20 C.F.R. 404.1571 *et seq*., and 416.971 *et seq*.).

3.  The claimant has the following severe impairments: ischemic cardiomyopathy; coronary artery disease; gout; and chronic lower back pain (20 C.F.R. 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except must avoid concentrated exposures to extreme temperatures and hazardous conditions such as heights and machinery, and must have a sit or stand option.

6.  The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7.  The claimant was born on August 23, 1959 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8.  The claimant has a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision, which was denied (Tr. 1-3). Thus, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. §405(h).

## GOVERNING LEGAL STANDARDS

The Court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying or reversing that decision. 42 U.S.C. §405(g), sentence four. In exercising its "sentence four" jurisdiction, the Court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir. 1981). It has been described as a sufficient amount of evidence "to justify, if the trial went to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n.1 (6th Cir. 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must examine the evidence of record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir. 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir. 1986).

When conducting substantial evidence review, the Court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir. 1993).

To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income benefits (SSI), a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes. Disability determination is a five-step sequential evaluation process, to-wit:

STEP 1: The claimant must not be engaged in substantial gainful activity.

STEP 2: The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age,

4

education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir. 1985). Any physical or mental impairment that has more than a *de minimis* effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step 3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§404.1509 and 416.909.

STEP 3: If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the Regulations ("the Listings"), a conclusive presumption attaches that the claimant is disabled.

STEP 4: The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

STEP 5: If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir. 1990).

BACKGROUND

Plaintiff Melvin Hampton suffered a myocardial infarction and cardiomyopathy on July 4, 2006, at age 46 (Tr. 25) which was thought to be cocaine induced (Tr. 176). His ejection fraction was 10-15% (Tr. 184), and he subsequently underwent a cardiac catheterization which the discharging physician described as "surprisingly" showing "minimal coronary artery disease" (Tr.

5

176). Since that episode, the plaintiff claims an inability to stand longer than fifteen to twenty minutes at a time, and an inability to walk more than a block or two before he becomes shaky and dizzy and needs to sit down (Tr. 27). He has difficulty on hot days, and trouble lifting a gallon of milk (Tr. 27). Despite these limitations, he stays home and cares for his three year old son all day long (Tr. 26) while his girlfriend works. At the time of the hearing, the plaintiff continued to be followed by his treating cardiologist Dr. Henes every three months (Tr. 31).

## DISCUSSION

Plaintiff contests Finding Nos. 5 and 11 contained in the administrative decision. Specifically, he takes issue with the ALJ's failure to accord controlling weight to the disabling opinions of treating cardiologist Dr. Gregory Henes and examining physician Dr. Theodros Mengesha, and argues that the controlling hypotheticals posed to the VE were deficient, as they did not take into account the restrictions assessed by Dr. Henes or Dr. Mengesha. Each of these assignments of error will be discussed below.

This case was denied at the fifth and final step of the sequential evaluation process based upon testimony from a vocational expert (VE). At this last step of the sequential evaluation process, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exists in the national economy that the claimant can still perform, *Born v. Secretary*, 923 F.2d 1168 (6th Cir. 1990). The VE testified that an individual with the physical limitations stated in Finding No. 5 would retain the ability to perform a significant number of "light" jobs in the national economy (Tr. 20-21). Unless the plaintiff points the court to evidence in the administrative record that he suffers from an additional, vocationally-significant restriction not

contemplated by the vocational testimony, which the ALJ was required to accept, the court should affirm the ALJ's decision upon the strength of the vocational testimony. See *Varley v. Secretary*, supra. The plaintiff argues that there are additional vocationally-significant restrictions contained in the opinions from Dr. Henes and Dr. Mengesha and not contemplated by the RFC or vocational testimony.

On April 13, 2007, treating cardiologist Dr. Gregory Henes completed a Physical Capacities Evaluation form which would limit the plaintiff to a residual functional capacity for less than sedentary work (Tr. 404). On that form, Dr. Henes indicates that the plaintiff is limited to sitting/standing/walking less than two hours in an eight hour work day, that he can never lift any amount of weight, and can never perform any of the postural activities of climbing, balancing, stooping, crouching, kneeling, or crawling. Dr. Henes anticipated that the plaintiff would be absent from work due to his impairments more than three times per month. He indicated that the plaintiff's prognosis is poor as a result of cardiomyopathy and severe left ventricle dysfunction with an ejection fraction of 20-25%. Dr. Henes found the plaintiff to be credible, opined that his impairments would be expected to last at least twelve months, and indicated that pain, fatigue, tingling, numbness or other symptoms would interfere with the plaintiff's concentration constantly. The plaintiff argues that the ALJ was required to accept and give controlling weight to the opinions of Dr. Henes.

This argument involves application of what is commonly known as the treating physician rule. The courts have long held that the treating physician – especially one who has seen the patient over a period of time -- is in a unique position to evaluate the functional impact of an impairment on her or his patient, and the law recognizes the importance of that point of view by according deference to the opinions of treating physicians. In *Wilson v. Commissioner*, 378 F.3d 541 (6th Cir.

2004), the court again confirmed the weight ordinarily due the opinion of a treating physician. *Wilson* also underlined the fact that the courts are bound to hold the Commissioner to the requirements of 20 C.F.R. Section 404.1527(d)(2), which calls for the ALJ to state clear reasons for rejecting or for limiting the weight given the opinion of a treating physician. See also SSR 96-2p.

A treating physician's opinion, if uncontradicted, should be given complete deference. See, e.g., *Walker v. Secretary of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir.1992). A treating physician's opinion is entitled to controlling weight if the Commissioner finds "that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. S 404.1527(d)(2)(1999). In other words, the opinion of a treating physician need not be given controlling weight unless supported by clinical or diagnostic findings. See *Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir.1997); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir.1993); *Kirk v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). However, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference," even if that opinion does not qualify for controlling weight. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007).

The ALJ discusses Dr. Henes's report at Tr. 19, and explains why he chose to give it little weight:

> On April 13, 2007, the claimant's treating cardiologist, Gregory Henes, M.D., completed a medical source statement on behalf of the claimant. Dr. Henes opined that the claimant could sit, stand, and/or walk for not more than 2 hours per day; may not lift even things weighing less than 5 pounds; may never climb, balance, stoop, crouch, kneel, or crawl; and would be expected to miss more than 3 days of work per month. Pursuant to the regulations, the opinion of a treating physician may be

8

accorded "controlling weight" if it meets a four part test as set out in Social Securtiy Ruling 96-2p; that is, it must be a "medical opinion" as defined in 20 CFR 404.1527(a) and 416.927(a); the opinion must come form a "treating source" as defined in 20 CFR 404.1502 and 416.902; the opinion must be well supported by medically acceptable clinical and laboratory diagnostic techniques and finally, the opinion must not be inconsistent with other substantial evidence of record. In this particular case, the undersigned is not persuaded to give controlling weight to Dr. Gregory Henes' opinion. Dr. Henes is a treating source and he has offered a medical opinion. However, his opinion is not well supported by his own clinical records, which show that the claimant has been stable from a cardiovascular standpoint for more than a year. Further, the opinion is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. Therefore, the opinion of Dr. Henes is given little weight.

Review of the medical records of Dr. Henes reveals that plaintiff was stable from a cardiovascular standpoint during the year following the myocardial infarction (Tr. 243, 233). Almost a year later on June 28, 2007, the plaintiff continued to have some complaints of shortness of breath with exertion, heart palpitations, and dizziness (Tr. 332) but physical examination showed regular heart rate and rhythm and an echocardiogram showed improvement in the plaintiff's left ventricular function (Tr. 332). Plaintiff's ejection fraction had improved to 40%, up from the 10-15% the year before when he suffered the heart attack (Tr. 332, 184). On April 3, 2008, Dr. Henes noted that a metabolic stress test had been performed, during which the plaintiff had good oxygen levels and was able to walk a half mile up hill for 12 minutes without chest pain (Tr. 384, 390). Dr. Henes further opined that the plaintiff's occasional chest discomfort does not appear to be cardiac in origin (Tr. 386). Dr. Henes again noted that the plaintiff was stable from a cardiac standpoint (Tr. 386).

Plaintiff argues that "remaining stable" does not establish that a condition is not disabling. He maintains that he suffers from a very restrictive heart condition that has not shown significant improvement (DN 11, p. 11). In support of his position, the plaintiff argues that the diagnoses

9

provided in late 2007 are essentially the same diagnoses that were assessed in 2006. The undersigned is not persuaded by this line of reasoning, as the mere (continued) diagnosis of a condition says nothing about its severity, *Higgs v. Secretary,* 880 F.2d 860, 863 (6th Cir. 1988). Contrary to the plaintiff's assertions, the ALJ's characterization of the medical records of Dr. Henes is not in error – the clinical records simply do not portray an individual with the limitations set forth in the medical source statement completed. Accordingly, the magistrate judge finds no error in the ALJ's declining to give controlling weight to Dr. Henes' opinions that essentially render the plaintiff "disabled" from all work.

In addition, the plaintiff argues that the ALJ improperly rejected the opinion of Dr. Theodros Mengesha, a consultative examining physician who, on December 18, 2006, examined the plaintiff and reviewed the July 4, 2006 echocardiogram. Dr. Mengesha found moderate physical evidence for significant restrictions in the plaintiff's tolerance for lifting and carrying, standing and walking, climbing, balancing, stooping, crouching, kneeling, crawling, pushing and pulling, and moving machineries (Tr. 200). He assigned no restrictions in the activities of sitting, reaching, handling, feeling, seeing, hearing, speaking, or any environmental restrictions other than moving machineries. The plaintiff was found to hear and understand normal conversational speech without difficulty, had no need for an assistive device for ambulation, and had normal gross manipulation (Tr. 200).

In addressing Dr. Mengesha's consultative examination (Tr. 18-19), the ALJ notes that the doctor's opinions are premised upon the July 2006, ejection fraction rates (which were immediately following the heart attack). The ALJ points out that Dr. Mengesha's physical examination of the plaintiff was grossly normal, and that subsequent echocardiograms show milder depressions. For these reasons, the ALJ chose to give Dr. Mengesha's opinions limited weight. The undersigned has

extensively reviewed the evidence of record, and finds that the ALJ's determination to give Dr. Mengesha's opinions limited weight is supported by substantial evidence in the form of other evidence of record which contradicts his (and Dr. Henes') opinions that render the plaintiff "disabled."

For example, the record also contains the November 9, 2006, consultative examination of Dr. Gary Wortz, who found normal heart rate and rhythm; no murmurs, clicks or gallops; and no physical evidence of congestive heart failure (Tr. 195). He noted no acute distress in the plaintiff; normal gait and station; and the plaintiff was able to walk across the room without an assistive device (Tr. 194). Dr. Wortz found no physical evidence for restriction of the plaintiff's stooping, bending, reaching, sitting, standing, moving about, lifting, carrying, handling objects or ability to travel (Tr. 195). In the plaintiff's favor, Dr. Wortz did indicate that the plaintiff would have, "decreased stamina and increased [sic] endurance in physical activity because of his decreased ejection fraction (Tr. 195)."

Non-examining state agency physicians Dr. Robert Brown and Dr. John Rawlings each reviewed the medical evidence and concluded that the plaintiff remained capable of performing light work. Dr. Rawlings reviewed the evidence on January 1, 2007 (Tr. 205-212), and Dr. Brown reviewed the evidence on July 9, 2007 (Tr. 320-323). Dr. Brown found that the plaintiff remains capable of lifting/carrying 20 pounds occasionally and 10 pounds frequently, standing/walking about six hours in an eight-hour workday, and sitting about six hours in an eight-hour work day. Dr. Brown assigned no limitations on the plaintiff's ability to push and/or pull, no postural, manipulative, visual, or communicative limitations, though he did include environmental limitations for plaintiff to avoid extreme heat and cold (Tr. 320-323).

While the plaintiff urges that it was error for the ALJ to rely upon the non-examining physicians' opinions over those of the treating and examining physicians, it should be noted that the state agency physicians are considered to be experts in Social Security disability programs and their opinions may be entitled to great weight if supported by the evidence, 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2); SSR 96-6p. Even though Dr. Brown did not have the opportunity to review the evidence submitted after his assessment, the ALJ did have the opportunity to do so. While this court may have weighed the evidence differently, the record as a whole does in fact support the ALJ's rejection of the opinions of Dr. Henes and Dr. Mengesha. The court finds no evidence of the ALJ's "playing doctor" by substituting his own opinions for those of the treating physician. There was ample basis in the record for rejecting the disabling opinions of Dr. Henes, as discussed above. The court finds that the ALJ's decision to accept the opinions of the non-examining state agency physicians over the unsupported opinion of the treating and examining physicians is supported by substantial evidence and is entitled to deference.

Regarding the plaintiff's argument that the controlling hypotheticals did not include the restrictions assessed by Dr. Henes or Dr. Mengesha, the court has determined that neither of these opinions were entitled to controlling weight and were properly discounted by the ALJ as being unsupported by the objective medical evidence and inconsistent with the record as a whole. The ALJ was required to pose to the VE only those limitations that he accepted as credible, See 20 C.F.R. §§ 404.1527(d), 404.1529, 416.927(d), 416.929; *Casey v. Secretary*, 987 F.2d 1230, 1235 (6th Cir. 1993). The plaintiff has simply failed to establish additional, vocationally-significant restrictions not contemplated by the vocational testimony, which the ALJ was required to accept. Accordingly,

the court will affirm the ALJ's decision upon the strength of the vocational testimony.  See *Varley v. Secretary*, supra.

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence and **RECOMMENDS** that the complaint be **DISMISSED**.

## NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended, any party shall have a period of fourteen (14) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court.  Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections.  A period of three days shall be added to each fourteen (14) day period above pursuant to Fed.R.Civ.P. 6(d), for a total of seventeen (17) working days.

The court shall not conduct a de novo review of objections that are general, conclusory, or merely adopt previous pleadings.  The original objections shall be sent to the Clerk of Court either electronically or by mail.  A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah KY 42001 or via e-mail to w_david_king@kywd.uscourts.gov.  Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party.  *Thomas v. Arn*, 474 U.S. 140 (1985).